SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
Email: jmeer@seyfarth.com
Richard Y. Chen (SBN 225392)
Email: rchen@seyfarth.com
Michael Afar (SBN 298990)
Email: mafar@seyfarth.com
Jared W. Speier (SBN 311751)
Email: jspeier@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California  90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
HURLEY INTERNATIONAL, LLC; and
NIKE, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENA N. TINCHER, on behalf of herself, and all others similarly situated, and as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Private Attorneys General Act of 2004, <br><br> Plaintiff(s), <br><br> v. <br><br> HURLEY INTERNATIONAL, LLC, an Oregon limited liability company; NIKE, INC., an Oregon corporation; and DOES 1 through 50, inclusive, <br><br> Defendant(s). | Case No.  2:19-cv-4104 <br><br> **DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332(d), 1446, 1453** <br><br> [Los Angeles County Superior Court; Case No. 19STCV08627] <br><br> Complaint Filed:  March 14, 2019 |

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JENA N. TINCHER AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Nike, Inc. ("Nike" or "Defendant") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of Los Angeles, to the United States District Court for the Central District of California. This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

**I.    BACKGROUND**

1.    On March 14, 2019, Plaintiff Jena N. Tincher filed a class action complaint in the Superior Court of California for the County of Los Angeles, titled *JENA N. TINCHER, on behalf of herself, and all other similarly situated as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Private Attorney's General Act of 2004, v. HURLEY INTERNATIONAL, LLC, an Oregon limited liability company; NIKE, INC., an Oregon Corporation; and DOES 1 through 50, inclusive,* Case No. 19STCV08627 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.    Nike was served with the Summons and Complaint and accompanying documents on April 10, 2019. True and correct copies of the (1) Service of Process Notice; (2) Summons; (3) Civil Case Cover Sheet; and (4) Certificate of Assignment is attached hereto as **Exhibit B**.

3.    The Superior Court's order regarding the initial status conference is attached hereto as **Exhibit C**.

4.    Nike and Hurley International, LLC ("Hurley") (collectively, "Defendants") filed their Answer to Plaintiff's Complaint on May 10, 2019. A true and correct copy of Defendants' Answer is attached hereto as **Exhibit D**.

1

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

5.     Defendants have not filed any other pleadings or papers in this action prior to this Notice of Removal.  The exhibits listed above constitute all prior pleadings, process, and orders filed with the court in this matter.

## II.     TIMELINESS OF REMOVAL

6.     The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named Defendant's time to remove is triggered by simultaneous service of the summons and complaint").

7.     The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

8.     The 30-day time limit to remove was triggered by Plaintiff's service of the Summons and Complaint on April 10, 2019.  *See Murphy Bros., Inc.*, 526 U.S. at 347-48 (holding that "a named Defendant's time to remove is triggered by simultaneous service of the summons and complaint").

9.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on the agents for service of process for Defendant, on April 10, 2019.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served.  Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on April 10, 2019 is May 10, 2019.

2

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

## III.   HURLEY CONSENTS TO THE REMOVAL

10.   Plaintiff has also named Hurley International, LLC, as a defendant in this lawsuit.  There is no requirement that Hurley consent to this removal. 28 U.S.C. § 1453(b) (Under CAFA, an action "may be removed by any defendant without the consent of all defendants.")  Nonetheless, Hurley consents to this removal. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient" to establish unanimous joinder in removing to federal court).  Accordingly, all Defendants consent to this removal.

## IV.   CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

11.   This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of the Defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 332(d)(5)(B); *see* Declaration of Steve Nelson in Support of Defendant's Notice of Removal ("Nelson Decl."), ¶ 4.

### A.   Plaintiff And Defendant Are Minimally Diverse

12.   CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Nike (Oregon).

#### 1.   Plaintiff Is A Citizen Of California

13.   For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

(9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state."). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

14. In her Complaint, Plaintiff alleges that she "is an individual and a resident of Cherry Valley, California." (Ex. A, Compl. ¶ 10.) Plaintiff was also domiciled in California while she worked at Hurley retail stores located in Cabazon, Los Angeles, Irvine, and Costa Mesa, California. (Ex. A, Compl. ¶ 27; Nelson Decl., ¶ 9.)

15. Additionally, Plaintiff provided her home address during the course of her employment for purposes of her personnel file, payroll checks, state payroll, and tax withholdings. (Nelson Decl., ¶ 10.) Nike's review of Plaintiff's personnel file from her employment reveals that Plaintiff resides in Cherry Valley, California. (*Id.*) A public records search for Plaintiff also reveals that she resides in Cherry Valley, California. (*Id.*)

16. Plaintiff's intent to remain domiciled in California is evident from the fact that she brought her lawsuit against Defendants in Los Angeles Superior Court. Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2. Nike is Not a Citizen Of California

17. Nike, is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). For purposes

4

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

18. Defendant Nike is now, and ever since this action commenced has been, incorporated under the laws of the State of Oregon, with its principal place of business in Beaverton, Oregon. (Declaration of Adrian Bell in Support of Defendant's Notice of Removal ("Bell Decl."), ¶ 3.) Thus, for purposes of diversity jurisdiction, Nike is a Citizen of Oregon.

19. Further, as shown below, Nike's principal place of business is, and has been at all times since this action commenced, located in the State of Oregon. (Bell Decl., ¶¶ 4-5.) Thus, for purposes of diversity jurisdiction, Nike is a citizen of Oregon.

20. The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

21. Under the "nerve center" test, Oregon emerges as Nike's principal place of business. Beaverton, Oregon is the site of Nike's corporate headquarters and executive offices, where its high level officers direct, control, and coordinate Nike's activities. (Bell Decl., ¶ 4.) Furthermore, many of Nike's executive and administrative functions, including corporate financing and accounting, are directed from Beaverton, Oregon.

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

(Bell Decl., ¶ 5.)  Accordingly, Nike's principal place of business is Beaverton, Oregon under the "nerve center" test.  *See Hertz Corp.*, 130 S. Ct. at 1192.

22.     Therefore, for diversity of citizenship purposes, Nike is, and has been at all times since this action commenced, a citizen of the State of Oregon.  28 U.S.C. § 1332(c)(1).

23.     Because Plaintiff is a citizen of California and Nike is a citizen of Oregon, minimal diversity exists for purposes of CAFA.

24.     **Doe Defendants.**  The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Thus, the existence of Doe defendants one through fifty does not deprive this Court of jurisdiction.  *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

**B.     The Amount In Controversy Exceeds The Statutory Minimum**

25.     CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  Moreover, the Senate

6

56618995v.1

Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

26.    **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class she purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

27.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy

7

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy . . . we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[W]here a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

28. To satisfy this standard, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014).

29. The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is **not** obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted) (emphasis in original); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").

30. It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

56618995v.1

31.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino.*, 506 F.3d at 702 (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

32.     **The Court Must Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to all putative class members reasonable"); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work

9

56618995v.1

for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

33. Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less

10

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

34. The Complaint asserts 7 causes of action against all Defendants for: (1) "Failure to Pay All Wages Earned for All Hours Worked"; (2) "Failure to Provide Rest Breaks"; (3) "Failure to Provide Meal Periods"; (4) "Failure to Provide Accurate Wage Statements"; (5) "Failure to Timely Pay Wages Upon Termination"; (6) "Unfair Competition"; and (7) "Civil Penalties under the Labor Code Private Attorneys General Act." (Ex. A, Compl.)

35. The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll persons Defendants employed in California as hourly non-exempt retail store employees at all Hurley retail stores, including sales leads, and persons in other similar positions ('Class Members'), at any time during the period beginning four years prior to the filing of this action and ending on the date that final judgment is entered in this action." (Ex. A, Compl. ¶ 17.) Given that Plaintiff's Complaint was filed on March 14,

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

2019, for purposes of the calculations in this Notice of Removal the "relevant time period" is from **March 14, 2015** until the present.

36. During the time period identified in the Complaint, Defendants employed approximately 517 non-exempt employees in California, who worked a total of approximately 30,471 workweeks. (Nelson Decl., ¶ 4.) The average hourly rate of pay for these individuals is approximately $11.92 per hour during the proposed class period. (Nelson Decl., ¶ 5.)

37. Plaintiff seeks to recover, on behalf of herself and the alleged class, unpaid wages and penalties for Defendants' alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, and unfair business practices. (Ex. A, Compl. ¶ 40.). Plaintiff also seeks attorneys' fees and costs for all causes of action. (Ex. A, Compl. Prayer for Relief.) Plaintiff also seeks civil penalties under PAGA. (*Id.*)

38. As set forth below, the amount in controversy implicated by the class-wide allegations exceeds $5,000,000. **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.** When the amount in controversy is not apparent from the face of the Complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Abrego*, 443 F.3d at 682-83.

39. The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees of Defendants, such as Plaintiff.

### 1. Unpaid Minimum Wage And Overtime Compensation

40. For her first cause of action, Plaintiff alleges that "[a]t all relevant times during the applicable limitations period, Defendants knowingly failed to compensate Plaintiff and the other Class Members for all hours worked, including, but not limited to overtime wages for hours in excess of 40 in a week, all in excess of eight in a day and all

12

56618995v.1

for the 7th day worked in a workweek." (Ex. A, Compl. ¶ 52), and "Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to [Plaintiff] and the Class Members with respect to working conditions and compensation arrangements." (Ex. A, Compl. ¶ 54).

41.    Plaintiff does not, however, provide any details in terms of how many hours per day or week she and the putative class members allegedly worked without compensation.  However, activities that take only ten minutes or less outside an employee's scheduled working hours are generally considered *de minimis* outside of California, and thus not compensable.  *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062, 1063 (9th Cir. 1984) ("[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved"; "most courts have found daily periods of 10 minutes *de minimis* even though otherwise compensable").  And, although the California Supreme Court recently held that the *de minimis* doctrine may not be available in defending against unpaid wage claims under the California Labor Code in many contexts, it addressed specifically instances involving regular or routine minutes of off-the-clock work, and indicated that the defense may still be available in the context of "minute or irregular" instances of compensable time.  *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 835 (2018).

42.    The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years.  *See* Cal. Code Civ. § Proc. 338.  Plaintiff's UCL claim, however, extends the liability period of the overtime and minimum wage claim to four years.  *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued.").  Thus, for determining the amount in controversy for Plaintiff's overtime and minimum wage claim, the UCL's four-year statute of limitations applies. Thus, although Defendants deny Plaintiff's allegations or that she or the putative class are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations and the

13

56618995v.1

remaining applicability of the *de minimis* rule, that employees worked, at minimum, one hour of unpaid time per week. One hour per week of unpaid time is just a few minutes of alleged time off the clock before and after each shift. An estimate of one hour per class member per week is appropriate in light of Plaintiff's allegation that Defendants had a "pattern and practice" of wage abuse, including overtime violations. *See Wheatley*, 2019 WL 688209, at \*5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at \*2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at \*4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at \*7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work). As such, the reasonable estimate of the amount in controversy for Plaintiff's first cause of action is **$544,821.48** [($11.92/hour \* 1 hour per week \* 30,471 workweeks \* 1.5 OT premium)].

### 2. Meal And Rest Period Claims

43. For her second cause of action, Plaintiff claims that "at relevant times within the applicable limitations period, Defendants had a policy, practice, or a lack of a policy which resulted in Defendants not providing the Class Members with all rest breaks required by California law." (Ex. A, Compl. ¶ 68.)

14

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

44. For her third cause of action, Plaintiff claims that "at relevant times within the applicable limitations period, Defendants had a policy, practice, or a lack of a policy which resulted in Defendants not providing the Class Members with all meal periods required by California Labor Code § 512 and the Wage Order, including, but not limited to, a second 30-minute uninterrupted meal period on workdays they worked more than ten hours in a workday." (Ex. A, Compl. ¶ 79.)

45. Plaintiff alleges that "[a]t all relevant times, Defendants failed to provide Plaintiff an the Class Members adequate rest breaks . . . during most of their work days." (Ex. A, Compl. ¶¶ 29-30.). Additionally, Plaintiff alleges that "Defendants have failed to provide Plaintiff and the other Class Members all rest and/or meal period . . . . [and] Plaintiff and other Class Members often had to assist customers with returns during their meal periods." (Ex. A, Compl. ¶¶ 31-32.). Plaintiff also alleges that at all relevant times, Defendants "routinely denied Plaintiff and other Class Members an uninterrupted timely second rest period." (Ex. A, Compl. ¶¶ 35, 38.)

46. For both causes of action for meal period and rest period violations, Plaintiff also claims that Defendants failed to pay her and the putative class members "additional wages for all rest breaks not provided to them" and "additional wages for all meal periods not provided to them." (Ex. A, Compl. ¶¶ 69, 80.)

47. Plaintiff further alleges that "Plaintiff's claims are typical of the other Class Members' claims. Plaintiff is informed and believes and thereon alleges that Defendants have a policy, practice, or lack of a policy which resulted in Defendants failing to comply with the California Labor Code and the Business and Professions Code as alleged herein." (Ex. A, Compl. ¶ 22.)

48. Plaintiff seeks separate payments for (1) denial of rest breaks and (2) denial of meal periods. (Ex. A, Compl. ¶¶ 71, 82.) Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period or a rest period. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010

15

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day). Plaintiff alleges each putative class member is entitled to meal break premiums for each meal period missed and rest break premiums for each rest period missed.

49. The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal and rest break premium pay as part of her unfair competition claim under Business and Professions Code section 17200, et seq. (Ex. A, Compl., ¶ 104.) Although Defendants contend that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of her Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

50. Plaintiff is silent as to the amount of alleged meal periods or rest periods she claims to have been denied, thereby precluding precise estimates of the amount in controversy. Because Plaintiff alleges that Defendants had a "policy, practice, or a lack of a policy which resulted in Defendants not providing the Class Members with all meal periods [and rest periods]" (Ex. A, Compl., ¶¶ 68, 79), and "Plaintiff's claims are typical of the other Class Members' claims" (Ex. A, Compl., ¶ 22), the Complaint contemplates a 100% violation rate. Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific

16

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

51.     While Nike is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Nike will conservatively assume that putative class members were not provided five meal periods and three rest periods each workweek.[1]  Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there were five meal period and three rest break violations each week for every employee. *See Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4

---

[1] Plaintiff cannot allege that this action "involves common questions of law and fact to the potential class" without also implicitly alleging that each putative class member suffered at least five meal period or three rest period violations per week based on "policy, practice, or lack of policy." (Ex. A, Compl. ¶¶ 68, 79.)

17

56618995v.1

(C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week).

52.     As stated above, there are approximately 517 current or former non-exempt employees of Defendants in California during the time period identified in the Complaint, who worked a total of approximately 30,471 workweeks.  (Nelson Decl., ¶ 4.)  Assuming that the employees were not provided five meal periods and three rest periods each workweek, the amount in controversy for Plaintiff's meal and rest period claims is **$2,905,714.56** [($11.92/hour * 8 premium payments[2] * 30,471 workweeks)].

### 3.     Wage Statement Penalties

53.     For Plaintiff's fourth cause of action, she alleges that Defendants failed to maintain and provide the putative class with accurate itemized wage statements, in violation of California Labor Code section 226.  (Ex. A, Compl. ¶ 89.)  Plaintiff further alleges that "Defendants' failure to provide Plaintiff and the Class Members with accurate wage statements was knowing and intentional.  Defendants had the ability to provide Plaintiff and the Class Members with accurate wage statements but intentionally provided wage statements that Defendants knew were not accurate."  (Ex. A, Compl. ¶ 90.)

54.     Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee,

---

[2] Five Meal Period Violations + Three Rest Period Violations = 8 Premium Payments.

18

56618995v.1

up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code section 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).

55. Defendants pay their non-exempt employees every two weeks. (Nelson Decl., ¶ 6.) Accordingly, there are approximately 26 pay periods per year. (*Id.*)

56. Based on Plaintiff's allegations that she and the putative class were subject to off-the-clock work, were not paid the correct overtime rate, and were not paid premium wages for noncompliant meal and rest breaks Plaintiff alleges that Defendants "failed to properly and accurately itemize **each** employee's gross wages earned, net wages earned, the total hours worked, the corresponding number of hours worked by employees and other requirements California Labor Code § 226." (Ex. A, Compl. ¶ 89; emphasis added).

57. Plaintiff filed her Complaint on March 14, 2019. Therefore, the statutory period for a claim under California Labor Code § 226 runs from March 14, 2018 to the present.

58. During the one-year statute of limitations period for the wage statement claim, 253 putative class members worked approximately 4,534 pay periods. (Nelson Decl., ¶ 7.) Thus, the amount in controversy for Plaintiff's fourth cause of action for wage statement penalties is **$440,750** [($100 x 4,534 pay periods) - ($50 for the initial pay period x 253 initial pay periods)].

### 4. Waiting Time Penalties

59. For Plaintiff's fifth cause of action, she alleges that "Defendants failed to timely pay Plaintiff and the Class Members all earned and unpaid wages in violation of Labor Code section 201 or 202." (Ex. A, Compl. ¶ 97.) Additionally, Plaintiff alleges that Defendants alleged failure to pay all wages at the time of termination was "willful in that, at all relevant times, Defendants have deliberately maintained policies and practices that violate the requirements of the Labor Code and the Wage Order even though, at all relevant times, they have had the ability to comply with those legal requirements."

19

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

(Ex. A, Compl. ¶ 100.)  Plaintiff seeks waiting time penalties, not to exceed 30 days of penalties for each class member.  Lab. Code § 203; (Ex. A, Compl. ¶ 101.)  Pursuant to Labor Code § 203, an employer who willfully fails to pay all wages due at the time of termination or resignation results in a penalty of continued wages for each day a former employee is not paid, up to a thirty day maximum.  *See* Cal. Lab. Code § 203(a).

60.    The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or March 14, 2016.  *See Pineda*, 50 Cal. 4th at 1399 ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

61.    Because Plaintiff does not allege that some class members worked part time, it is reasonable to assume that each employee worked eight hour shifts.  *Wheatley*, *LLC*, 2019 WL 688209, at *6 ("it is reasonable for Defendant to assume eight-hour shifts").  It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").  From March 14, 2016 to the present, 301 non-exempt employees were separated from their employment.  (Nelson Decl., ¶ 8.)  Accordingly, although Defendants dispute liability, a reasonable estimate of the amount in controversy for section 203 penalties is **$861,100.80** [$11.92/hour x 8 hours/day x 30 days x 301 former employees].[3]

---

[3] The waiting-time penalty calculation does not include future damages, though they are properly considered.

20

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

62.     Although Nike denies Plaintiff's allegations or that she or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$4,752,386.84** calculated as follows:

| | | |
|---|---|---|
| · | $ **544,821.48** | Overtime and Unpaid Minimum Wage Claims |
| · | $ **2,905,714.56** | Meal/Rest Period Claim |
| · | $ **440,750.00** | Wage Statement Claim |
| · | $ **861,100.80** | Waiting Time Penalties Claim |

63.     The figures above do not take into account Plaintiff's claim for PAGA penalties, attorneys' fees, or Plaintiff's claim for liquidated damages for her unpaid minimum wage claim.

### 5.     Attorneys' Fees

64.     Plaintiff also seeks attorneys' fees.  (Ex. A, Compl. Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.")

65.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11);

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1

*Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

66.     In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

67.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Wheatley, LLC*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of

22

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at \*16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).  Even under the conservative benchmark of 25 percent of the total recovery, attorneys' fees alone would be upward of **$1,188,096.71** in this case.

68.    Although Defendants deny Plaintiff's allegations that she or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, the total amount in controversy exceeds **$5,940,483.55**, including attorneys' fees.[4]  This amount exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

69.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

70.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

**V.    VENUE AND INTRADISTRICT ASSIGNMENT**

71.    Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(a), 1441, 1446(a) and 84(c).  This action originally was brought in Los Angeles County Superior Court of the State of California,

---

[4] Approximately $4,752,386.84 for the causes of action alleged in the Complaint, plus $1,188,096.71 in attorneys' fees as 25% of the total potential recovery, results in a total amount in controversy of approximately $5,940,483.55.

23

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The County of Los Angeles is located within the jurisdiction of the United States District Court, Central District of California, Western Division.

## VI.    NOTICE OF REMOVAL

72.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.  The Notice of Removal is concurrently being served on all parties and counsel of record.

## VII.    PRAYER FOR REMOVAL

73.    WHEREFORE, Defendant prays that the above action now pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED:  May 10, 2019                    SEYFARTH SHAW LLP


By: */s/ Michael Afar*
Jon D. Meer
Richard Y. Chen
Michael Afar
Jared W. Speier

Attorneys for Defendants
HURLEY INTERNATIONAL, LLC; and
NIKE, INC.

24

DEFENDANT NIKE, INC.'S NOTICE OF REMOVAL

56618995v.1